IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CEDRIC ARMOND MITCHELL                                                                  PLAINTIFF

v.                        Civil No. 6:23-cv-06069-SOH-MEF

DEPUTY WARRINGTON,
OFFICER STAPLETON, and
JANE DOE OFFICERS                                                                      DEFENDANTS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed under 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening pursuant to 28 U.S.C. § 1915A.[1] Under § 1915A, the Court is required to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

### I.  BACKGROUND

Plaintiff filed his Complaint on June 6, 2023.  (ECF No. 1).  He filed an Amended Complaint on June 12, 2023.  (ECF No. 6).  Plaintiff is currently incarcerated in the Saline County Detention Center, but his claims arose when he was a pretrial detainee at the Garland County Detention Center ("GCDC").  (*Id*. at 2).

At GCDC, Plaintiff was placed in a suicide watch cell.  (ECF No. 6, p. 6).  Inconsistencies exist regarding the date(s) of the alleged incident.  Plaintiff states either August 16 or 17, or August 14 through 17, as the date(s) of the incident complained of, and he notes being confined and

---

[1] Enacted as part of the Prison Litigation Reform Act ("PLRA").

sleeping on the floor for three days. (*Id*. at 4-7). He further indicates he was at GCDC from August 16 to September 14 of 2022. (*Id*. at 4). The Court, in the light favorable to the Plaintiff, will construe these inconsistencies to mean that Plaintiff was in the suicide watch cell from August 14 through 17 of 2022. Plaintiff alleges that he was not given soap, a blanket, mat, cup for water, toilet paper and was not permitted to take a shower. (*Id*. at 4, 6). He further alleges that his sink barely worked. (*Id*. at 4). He alleges that he slept on the concrete floor, with no blanket, and that he was sore from "laying bone against concrete." (*Id*. at 6). Additionally, Plaintiff claims that he was not able to use the phone, contact his family, and that his mail was thrown out and never sent. (*Id*. at 7).

On either August 16 or 17, Plaintiff states that he had a "meltdown" because he had been "incarcerated for three days with[out] [a] phone call[], or cup to drink, or a mat to lay on," which caused him to sleep "on the concrete floor with no cover, freezing." (ECF No. 6, p. 5). Plaintiff alleges he requested his "inmate rights," but each deputy that came by ignored his request. (*Id*.). Plaintiff alleges he "got tired of asking to take a shower" and began to take a shower by using the water in the cell toilet. (*Id*.). Deputy Warrington ("Warrington") came to Plaintiff's cell, handcuffed him through the cell door, and told him he was flooding the cell. (*Id*. at 5, 8). Warrington asked Plaintiff to sit in the chair, but Plaintiff refused. (*Id*. at 5). Warrington then allegedly grabbed Plaintiff by the head and pushed him into the wall, then took him down to the ground with help from the other officers. (*Id*. at 5, 8). Plaintiff attempted to bite Warrington, at which point Warrington began to punch Plaintiff multiple times in the face. (*Id*. at 5). Plaintiff alleges that he was punched six times in the face, and that he was run into the ground headfirst. (*Id*. at 8). Officer Stapleton ("Stapleton") then put his knee on Plaintiff's neck and his face near the water on the floor causing water to go into Plaintiff's nostrils, which caused him to feel like he

was drowning. (*Id*.). Plaintiff struggled to keep his nose and mouth out of the water. (*Id*.). The incident left a knot on the side of Plaintiff's head. (*Id*.).

Plaintiff files two claims, one characterized as a claim of conditions of confinement against Deputy Warrington and the Jane Doe Officers, and a second claim of excessive force against Deputy Warrington, Officer Stapleton, and the Jane Doe Officers. (ECF No. 6, pp. 5,7). All claims are brought against Defendants in their official capacity only. (*Id*. at 5, 7).

Plaintiff seeks $1 million dollars in compensatory damages. (ECF No. 6, p. 9). He states that he lost his daughter in November 2021, after she was sent from Garland County custody to Conway Human Development Center "due to same instances." (*Id*.). Plaintiff states that he was depressed and mentally anguished and felt like "everyone is trying to do to me the same fate that the state [did] to my daughter." (*Id*.). Plaintiff asserts that "when people are going through mental break downs you help them, not beat them or kill them." (*Id*.).

## II.     LEGAL STANDARD

Under § 1915A, the Court is obliged to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief

may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up). However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III. ANALYSIS

#### A. Official Capacity Claims

Plaintiff proceeds against Defendants only in their official capacity. (ECF No. 6, pp. 5,7). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work. *Hafer v. Melo*, 502 U.S. 21, 112 (1991). An official capacity claim requires proof that a custom, policy, or widespread practice of the governmental entity caused the violation. *Id.* A policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). A custom refers to the "existence of a continuing widespread, persistent pattern of unconstitutional misconduct." *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Here, Plaintiff points to no facts that support his assertion that a policy or custom exists, relying only on his own experience at GCDC. *See Sykes v. Mitcham*, No. 1:22-CV-01049-SOH-

4

BAB, 2022 WL 17660958, at *3 (W.D. Ark. Sept. 29, 2022) (holding that Plaintiff's official capacity claim against Defendant failed because Plaintiff failed to show Defendant was acting pursuant to a policy or custom); *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (holding that a single set of individual circumstances cannot create a custom). Thus, Plaintiff's official capacity claims fail.

Accordingly, it is recommended Plaintiff's official capacity claims against the Defendants be dismissed without prejudice.

### B. Individual Capacity: Conditions of Confinement

Even if Plaintiff were to amend his complaint to sue Defendants in their individual capacity, Plaintiff has failed to demonstrate that Defendants violated his constitutional rights. For a pretrial detainee, this Court analyzes conditions of confinement claims under the Fourteenth Amendment's Due Process Clause. *Stearns v. Inmate Services Corporation*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 525 n.16 (1979)). In articulating the standard governing a pretrial detainee's claims related to conditions of confinement, the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979) held that the government may detain defendants prior to trial and "may subject them to the restrictions and conditions of a detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536-37. There are two ways to determine whether conditions of confinement rise to the level of punishment. First, "a plaintiff could show that the conditions were intentionally punitive." *Id.* at 538. Alternatively, "if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate government purpose or were excessive in relation to that purpose." *Stearns*, 957 F.3d at 907 (quoting *Wolfish*, 441 U.S. at 538-39). Not every disability imposed during pretrial detention amounts to punishment in the

constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). "There is a *de minimis* level of imposition with which the Constitution is not concerned." *Id*. "In considering whether the conditions of pretrial detention are unconstitutionally punitive, [courts] review the totality of the circumstances of a pretrial detainee's confinement." *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010).

Here, Plaintiff does not allege that Warrington or the Jane Doe Officers created conditions that were intentionally punitive. The government had a legitimate governmental purpose, as Plaintiff does not allege that he should not have been placed in the suicide watch cell, and he admitted to feeling depressed and mentally anguished. A risk of suicide by an inmate is a serious medical need. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). The law has clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk. *Rellergert by Rellergert v. Cape Girardeau County, Mo.*, 924 F.2d 794, 797 (8th Cir. 1991).

Plaintiff alleges that he was not given soap, toilet paper, a blanket, a mat, a cup for water, and other necessities. He further alleges his sink barely worked and that he was denied a shower. The Eighth Circuit has held that jailers cannot generally deny basic human necessities. *Green v. Baron*, 879 F.2d 305, 309 (8th Cir. 1989). However, the court has "not adopted an unconditional prohibition against deprivations of necessities," but instead, considers "several factors in determining the constitutionality of deprivations, including the degree and duration of the deprivations, the reason for the deprivations, and the other surrounding circumstances." *Id*. The Court has recognized that a constitutional reason for removing clothing and bedding from a cell is if someone in custody is suicidal. *Id*. Further, Plaintiff spent only three days in the suicide watch cell. The Court has generally found minimal amounts of time to be acceptable for deprivations. *See O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (holding that there

6

was no constitutional violation when a prisoner did not have underwear, blankets, or a mattress for four days); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (finding no violation when a prisoner was in a strip cell for four days without clothes, mattress, running water, a flushing toilet, bedding, mail, hot food, and hygiene supplies). Thus, based on Plaintiff's allegations, he has failed to state a plausible individual capacity conditions of confinement claim.

## IV. CONCLUSION

For these reasons, it is recommended that Plaintiff's Amended Complaint (ECF No. 6) be dismissed without prejudice pursuant to 28 U.S.C. § 1915A.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of July 2023.

/s/ *Mark E. Ford*
---
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE